**Exhibit 13**

## Cases Involving Nicoletti

| Case | Description |
|---|---|
| Prud'homme v. Nicoletti, et. al. | $5,000.00 Sanction against Nicoletti for "filing a frivolous lawsuit" and "signing a pleading which is not warranted" |
| Levy v. Paul J. Nicoletti | Malpractice against Nicoletti |
| Apollo v. Nicoletti | Injunction entered against Nicoletti enjoining further dissemination of information |
| Read v. GreenTree | $ 30,799.40 Sanction against Nicoletti law firm for willful violation of stay |
| Ansley v. Conseco | $ 25,598.24 sanction against Nicoletti for pursing claim that was "frivolous" and "devoid of a legal or factual basis and was intended to harass." |
| Reed v. Countrywide | Costs of $250 order to be paid by Nicoletti, to be "personal and shall not be charged back to the client or to the State." |
| | |

# STATE OF MICHIGAN

# COURT OF APPEALS

ROBERT PRUD'HOMME,

    Plaintiff,

v

DAVID IAN KATZMAN and MARY MICHELLE BELANGER KATZMAN,

    Defendants-Appellees,

and

PAUL J. NICOLETTI and FABRIZIO, NICOLETTI & WATSON, P.C.,

    Appellants.

UNPUBLISHED
March 7, 1997

No. 188674
Lapeer Circuit Court
LC No. 95-021074-CK

Before: Griffin, P.J., and McDonald and C. W. Johnson*, JJ.

PER CURIAM.

    Plaintiff's counsel, Paul J. Nicoletti of Fabrizio, Nicoletti & Watson, P.C., appeals by right an order awarding defendants $5,000 as sanctions for filing a frivolous lawsuit and for violating MCR 2.114(D), which prohibits signing a pleading which is not warranted by existing law or a good-faith argument for extending, modifying or reversing existing law. We affirm.

    Plaintiff and defendants entered into an oral contract for plaintiff to put an addition onto defendants' home. Plaintiff acted as general contractor although he was not licensed to do so by the State of Michigan. Defendants repudiated the contract after paying plaintiff $52,916.22. Plaintiff sued, claiming he was entitled to an additional $53,858.98, and advancing four theories of the case: (1) breach of contract, (2) lien foreclosure, (3) builder's trust fund violation, and (4) quantum meruit. Plaintiff later advanced two additional theories: (1) exemption from the licensing requirement, and (2) estoppel where defendants knew plaintiff was unlicensed when they hired him. The trial court granted

---

* Circuit judge, sitting on the Court of Appeals by assignment.

the trial court did not clearly err in finding that the complaint was devoid of merit and thus frivolous, and that counsel for plaintiff had violated MCR 2.114(D).

Plaintiff's counsel also claims the amount of the sanction was improper because it was based on the costs incurred in defending against plaintiff's claim. If an attorney files a frivolous claim, the trial court must award reasonable costs and attorney fees incurred by the prevailing party. MCL 600.2591; MSA 27A.2591; MCR 2.114(F); MCR 2.625(A)(2); *Broadway Coney Island, Inc v Commercial Union Ins Co*, 217 Mich App 109, 117 (No. 173719, rel'd 6/7/96). Upon a finding that an attorney violates the court rules by signing a meritless claim in violation of MCR 2.114(D), the attorney, the party or both, must be subject to an "appropriate" sanction under MCR 2.114(E); *People ex rel Prosecutor v Cergnul*, 203 Mich App 69, 73; 512 NW2d 49 (1993). The only limitation on the trial court is that it may not assess punitive damages. MRE 2.114(E); *People v Herrera (On Remand)*, 204 Mich App 333, 337; 514 NW2d 543 (1994). An award of reasonable expenses actually incurred is warranted for a frivolous claim and is "appropriate" under MCR 2.114(E). In the instant case, there was evidence that defendants had incurred in excess of $9,000 in attorney fees and costs. Under the circumstances, the trial court did not abuse its discretion in setting the amount of sanctions at $5,000. *Klco v Dynamic Training Corp*, 192 Mich App 39, 42; 480 NW2d 596 (1991), lv den 440 Mich 896; 488 NW2d 747 (1992).

Finally, plaintiff's counsel claims an award of sanctions is governed by MCR 2.625(F)(2) under which defendants failed to timely request sanctions, thus waiving their right to collect costs. Counsel's reliance on MCR 2.625(F)(2) is misplaced because it has been interpreted to apply only to situations in which costs may be taxed by the court clerk. This rule does not apply when a statute requires that costs be determined by the court. *Oscoda Chapter of PBB Action Committee, Inc, v Dep't of Natural Resources*, 115 Mich App 356, 361-362; 320 NW2d 376 (1982). Costs awarded pursuant to MCL 600.2591; MSA 27A.2591 require a judicial determination and thus, MCR 2.625(F) does not apply. *Avery* v *Demetropoulos*, 209 Mich App 500, 503; 531 NW2d 720 (1995). Although requests for sanctions should be made within a reasonable time after the prevailing party is determined, *Avery, supra*, 209 Mich App 500, 503; 531 NW2d 720, defendants brought their motion for sanctions thirty-eight days after entry of the final judgment, which is reasonable.

Affirmed. Defendants being the prevailing party, they may tax costs pursuant to MCR 7.219.

/s/ Richard Allen Griffin
/s/ Gary R. McDonald
/s/ Charles W. Johnson

# STATE OF MICHIGAN

# COURT OF APPEALS

HELEN LEVY,

        Plaintiff-Appellant,

v

PAUL J. NICOLETTI,

        Defendant-Appellee.

UNPUBLISHED
April 16, 1999

No. 204900
Oakland Circuit Court
LC No. 96-515050 CK

Before: Hood, P.J., and Holbrook, Jr. and Whitbeck, JJ.

PER CURIAM.

    Summary disposition was granted in favor of defendant pursuant to MCR 2.116(C)(7) after the trial court determined that plaintiff's claims in this legal malpractice action were merged and barred by a consent judgment entered into between the parties in a separate suit and thus, were barred by res judicata. We reverse and remand.

    Plaintiff retained defendant attorney to represent her in a divorce proceeding. Subsequent to the judgment of divorce, plaintiff filed an appeal to this Court, which found that the alimony, COBRA and property awards were fair and equitable, but remanded the case for a reevaluation of certain property. *Levy v Levy,* unpublished opinion per curiam of the Court of Appeals, issued November 12, 1996 (Docket No. 180486). Thereafter, defendant filed an action to collect his fee for services rendered in the divorce. Before resolution of that matter, plaintiff filed this action alleging legal malpractice. The parties then reached a settlement in the attorney fee matter and a consent judgment was entered by the court. The parties agreed on an amount to which defendant's law firm was entitled for representing plaintiff in the divorce action, and the judgment was secured by a lien on plaintiff's residence. The court also ordered as follows:

> IT IS FURTHER ORDERED AND ADJUDGED that post judgment proceedings and foreclosure proceedings with reference to the property described herein shall be stayed pending resolution in Oakland County Circuit Court of the matter captioned as *Helen Levy v Paul J. Nicoletti, Nicoletti & Watson, P.C. and Federlein & Keranen, P.C.*, Case #96-515050-CK.

After the consent judgment was entered by the court in the attorney fee action, defendant moved for summary disposition in this legal malpractice action pursuant to MCR 2.116(C)(7) and (C)(8). The trial court granted the motion pursuant to MCR 2.116(C)(7). Plaintiff thereafter moved for reconsideration, which motion was denied.

This Court reviews de novo decisions on motions for summary disposition to determine if the moving party was entitled to judgment as a matter of law. *Pamar Enterprises, Inc v Huntington Banks of Mich*, 228 Mich App 727, 738; 580 NW2d 11 (1998). "When reviewing a motion granted pursuant to MCR 2.116(C)(7), we consider all affidavits, pleadings, and other documentary evidence submitted by the parties and, where appropriate, construe the pleadings in favor of the plaintiff." *Id.,* citing *Smith v YMCA of Benton Harbor/St Joseph*, 216 Mich App 552, 554; 550 NW2d 262 (1996). A motion under MCR 2.116(C)(7) should be granted only if no factual development could provide a basis for recovery. *Id.* A trial court's denial of a motion for reconsideration is reviewed for an abuse of discretion. *In re Beglinger Trust*, 221 Mich App 273, 279; 561 NW2d 130 (1997).

Plaintiff argues that the trial court erred when it disregarded the intentions of the parties and the express language of the consent judgment that was entered into by the parties in the attorney fee case. She argues that settlement of the attorney fee case did not merge and bar the underlying legal malpractice action. We agree.

A consent judgment is a "product of voluntary agreement," and thus, reflects the agreement of the parties. *Klawiter v Reurink,* 196 Mich App 263, 266; 492 NW2d 801 (1992) (citations omitted). Moreover, "[a]n agreement to settle a lawsuit is a contract that is subject to the legal principles generally applied to contracts." *Reed v Citizens Ins Co,* 198 Mich App 443, 447; 499 NW2d 22 (1993). And, it is permissible for a party to settle a lawsuit while reserving the right to litigate other related claims. See *In re Stafford,* 200 Mich App 41, 43-44; 503 NW2d 678 (1993). In this case, the language of the consent judgment was clear and unambiguous that the parties did not intend to merge and bar the malpractice suit and its claims, but rather intended for the malpractice action to proceed to resolution. Plaintiff took steps to preserve her malpractice claims when the settlement was reached in the attorney fee case, and defendant agreed to this preservation by agreeing to the consent judgment. The consent judgment should not be construed to relinquish plaintiff's rights in the malpractice case. The trial court's ruling to the contrary, that the malpractice action was barred as a result of the settlement reached in the attorney fee action, was in error where it failed to take into consideration the clear and unambiguous language of the consent judgment, which indicated that the parties did not intend the consent judgment to extinguish the malpractice claims. Therefore, we reverse the trial court's grant of summary disposition.

On appeal, defendant also argues that even if the trial court's decision was incorrect, collateral estoppel bars plaintiff's legal malpractice action. The trial court was presented with this issue, but did not decide it. We may, however, properly review this issue where the question is one of law and the facts necessary for its resolution have been presented. *Adam v Sylvan Glynn Golf Course,* 197 Mich App 95, 98-99; 494 NW2d 791 (1993).

We hold that collateral estoppel may operate to bar some or all of plaintiff's claims of malpractice. In *Alterman v Provizer, Eisenberg, Lichtenstein & Pearlman, PC,* 195 Mich App 422, 424; 491 NW2d 868 (1992), the Court stated general principles of the doctrine of collateral estoppel:

> The doctrine of collateral estoppel holds that, where the first and second causes of action are different, "the judgment [rendered in the first cause of action] is conclusive between the parties in such a case as to questions actually litigated and determined by the judgment." By the "very definition" of the doctrine, "one of the critical factors" is "whether the respective litigants were parties or privy to a party." "In other words, '[t]he estoppel is mutual if the one taking advantage of the earlier adjudication would have been bound by it had it gone against him.'" [Citations omitted.]

The Court then noted, however, that "lack of mutuality does not always preclude the application of collateral estoppel." *Id.* (citation omitted). *Alterman* was a legal malpractice case where the defendant attorney had entered into a settlement on the plaintiff's behalf in an underlying lawsuit. The plaintiff later moved to set aside the settlement from that suit on the grounds that he was not competent at the time he entered into it. The federal trial court denied the motion. The plaintiff then sued the defendant attorney for malpractice, alleging that he was negligent for allowing or causing the plaintiff to settle when he was not competent to do so. *Id* at 423-424. This Court held that the plaintiff was collaterally estopped from relitigating that issue because of the federal court ruling, even though the parties were not identical in the underlying federal lawsuit and no mutuality existed. *Id.* at 427. In doing so, the Court noted:

> In *Caveney v Kirkpatrick,* unpublished opinion per curiam, decided August 13, 1991 (Docket No. 124149), this Court held that a wife's malpractice action against her divorce attorney based on the inadequacy of the property settlement was barred by an appellate decision in the divorce proceeding holding that the settlement was fair and equitable. [*Id.* at 426.]

In this case, this Court held that the property settlement was fair and equitable, and decided other issues with regard to the divorce judgment. *Levy, supra.* Any issues decided by this Court in the divorce proceeding, which also form the basis of the malpractice claim, are barred. On remand, the trial court shall determine what claims, if any, are barred by the doctrine of collateral estoppel.

Defendant also argues, in the alternative, that summary disposition should have been granted pursuant to MCR 2.116(C)(8). We disagree.

> MCR 2.116(C)(8) permits summary disposition when the opposing party has failed to state a claim upon which relief can be granted. A motion under this subsection determines whether the opposing party's pleadings allege a prima facie case. The court must accept as true all well-pleaded facts. Only if the allegations fail to state a legal claim is summary disposition pursuant to MCR 2.116(C)(8) valid. [*Stehlik v Johnson (On Rehearing),* 206 Mich App 83, 85; 520 NW2d 633 (1994).]

Plaintiff had the burden of adequately alleging the existence of an attorney-client relationship; negligence in the legal representation of the plaintiff; that the negligence was a proximate cause of an injury; and the fact and extent of the injury alleged. *Simko v Blake,* 448 Mich 648, 655; 532 NW2d 842 (1995). A duty to use and exercise reasonable skill, care, discretion and judgment in the conduct and management of a client's case exists as a matter of law if there is an attorney-client relationship. *Id.* at 655-656. Plaintiff's pleading, notwithstanding potential collateral estoppel problems, does not fail to state a claim. She alleged the existence of an attorney client-relationship and alleged that defendant was negligent in his representation, including making specific allegations that defendant negligently advised her with regard to the mediation evaluation, that he failed to accept the mediation evaluation pursuant to her requests, that he negligently advised her about her chances at trial, and that he failed to request a qualified domestic relations order pertaining to her husband's pension. Plaintiff also alleged that the defendant's negligent conduct was the direct and proximate cause of her damages, which damages were set forth in extensive detail.

We also disagree with defendant's proposition that plaintiff's complaint fails to state a claim because all of the allegations of negligence amount to tactical decisions, which cannot form the basis of a malpractice case. A motion for summary disposition pursuant to MCR 2.116(C)(8) is tested on the pleadings alone. *Simko,* supra at 654. Where we are not presented with sufficient supported facts or transcripts from the underlying divorce action, and where we are looking only to the pleadings, we cannot and will not rule on the issue of whether the alleged negligent acts were merely tactical decisions by defendant.

Finally, defendant also argues, in the alternative, that plaintiff's failure to respond to his affirmative defenses provides an additional basis to affirm dismissal in this case. We disagree because the lower court record contains within it a timely response to defendant's affirmative defenses.

Reversed and remanded for further proceedings. We do not retain jurisdiction.

/s/ Harold Hood
/s/ Donald E. Holbrook, Jr.
/s/ William C. Whitbeck

# MILLER CANFIELD

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

Founded in 1852
by Sidney Davy Miller

Sidney T. Miller (1864-1940)
George L. Canfield (1866-1928)
Lewis H. Paddock (1866-1935)
Ferris D. Stone (1882-1945)

MARK T. BOONSTRA
TEL: (313) 496-7624
FAX: (313) 496-8454
E-MAIL: boonstra@millercanfield.com

150 West Jefferson, Suite 2500
Detroit, Michigan 48226  (313) 963-6420
FAX: (313) 496-7500
www.millercanfield.com

MICHIGAN: Ann Arbor
Bloomfield Hills • Detroit
Grand Rapids • Kalamazoo
Lansing • Monroe

New York, N.Y.
Washington, D.C.
POLAND: Gdynia
Katowice • Warsaw

AFFILIATED OFFICE:
Pensacola, FL

August 9, 1999

**VIA FACSIMILE AND MAIL (248) 203-7801**

Paul J. Nicoletti, Esq.
Nicoletti & Associates, P.C.
1820 North Woodward
Suite 104
Bloomfield Hills, MI 48304

Re:  Apollo Financial Services

Dear Mr. Nicoletti:

This firm has been retained to represent Apollo Financial Services ("Apollo") with regard to claims arising from your misappropriation and disclosure of confidential information and trade secrets that belong to Apollo. As you know, Apollo was a client of Fabrizio & Nicoletti, P.C., a firm in which you were formally employed as an attorney. We have learned that you have disclosed trade secrets of Apollo on at least three occasions to at least eleven different people affiliated with at least two different companies in various states throughout the United States.

This course of conduct is in violation of the law, including but not limited to the Michigan Uniform Trade Secrets Act, M.C.L. § 445.1901 et seq., and also gives rise to several common law torts, including but not limited to misappropriation of trade secrets, conversion, malpractice and breach of fiduciary duty. We also suggest that you review the Code of Professional Conduct Rule 1.6 and the Economic Espionage Act of 1996, 18 U.S.C. § 1832.

On behalf of Apollo, we demand that you immediately cease disclosing trade secrets and confidential business information of Apollo, and that you return any and all such information to my office immediately. This includes any and all copies of business plans, financial reports, and any other client information.

Please contact us regarding this matter no later than August 16, 1999. If we do not hear from you, we will have no alternative but to se[...]




## STIPULATED ORDER FOR
## PERMANENT INJUNCTION AND DISMISSAL WITH PREJUDICE

At a session of said Court, held in the City of Pontiac, Oakland County, Michigan, this 6th day of December, 1999

PRESENT: HON. FRED M. MESTER
Circuit Court Judge

This matter having come before the Court on the stipulation of all parties, and the Court being advised in the premises;

IT IS HEREBY ORDERED that Defendants, Counter-Plaintiffs and Third Party Plaintiffs, Nicoletti and Associates, P.C. and Paul J. Nicoletti are hereby permanently restrained from dissemination of any information pertaining to Apollo Financial Services Inc, except upon further order of the Court.

IT IS FURTHER ORDERED that all claims, made in this lawsuit are dismissed in their entirety with prejudice and without costs or attorney fees, including counter claims and third party claims.

_[signature]_
JUDGE FRED M. MESTER

DELIB:2118459.1\112660-00001

-2-

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In Re: | Case No. 99-47379 |
| Shella Read,<br>            Debtor, | Chapter 7 |
| _____/ | Adv. Pro. No. 99-4569 |
| | Hon. Mary Ann Whipple |
| Shella Read,<br>            Plaintiff,<br>v.<br>Greentree Financial Servicing Corp., et al.,<br>            Defendants,<br>_____/ | |
| Greentree Financial Servicing Corp., et al.,<br>            Third Party Plaintiffs,<br>v.<br>Al Hinman,<br>            Third Party Defendant.<br>_____/ | |

## **MEMORANDUM OF DECISION**

This adversary proceeding came before the court for trial on Plaintiff's amended complaint [Doc. # 3] alleging a willful violation of the automatic stay under 11 U.S.C. § 362(h) against Defendants, Nicoletti & Associates, P.C. and Paul J. Nicoletti (collectively "the Nicoletti Defendants"),[1]  the Nicoletti

---

[1] Trial was originally commenced in April, 2002, against Greentree Financial Servicing Corp. ("Greentree"), now known as Conseco Finance Servicing Corp., as well as the Nicoletti Defendants.  But trial was not completed.  Although it was originally scheduled to resume on June 19, 2002, due to a medical condition that arose with respect to one of Plaintiff's lawyers, the trial was rescheduled to resume on February 5, 2003.  In the interim, however, Greentree commenced a Chapter 11 bankruptcy proceeding in the United States Bankruptcy Court for the Northern District of Illinois.  Thereafter, the scheduled trial date was again vacated as Plaintiff indicated she would seek relief from the automatic stay so as to proceed with trial against Greentree.  Stay relief  was never obtained and trial was scheduled to recommence on August 30, 2004.  But on August 27, 2004, Plaintiff filed an Emergency Motion for Adjournment of the August 30 trial, again due to a medical condition of Plaintiff's counsel.  As a result, trial did not recommence until

### B. Was the Violation of the Automatic Stay Willful?

Defendants assert that the "willful" element of § 362(h) requires Read to prove that Defendants' conduct was egregious. But the overwhelming weight of authority, which this court finds persuasive, embraces a much broader construction of the term and holds that a willful violation occurs when a party acts deliberately with knowledge of the debtor's bankruptcy petition. *See, e.g., Fleet Mortg. Group, Inc. v. Kaneb*, 196 F.3d 265, 269 (1st Cir. 1999); *Crysen/Montenay Energy Co. v. Esselen Assoc., Inc. (In re Crysen/Montenay Energy Co.)*, 902 F.2d 1098, 1105 (2d Cir. 1990); *Lansdale Family Rest., Inc. v. Weiss Food Serv. (In re Lansdale Family Rest., Inc.)*, 977 F.2d 826, 829 (3d Cir. 1992); *Knaus v. Concordia Lumber Co. (In re Knaus)*, 889 F.2d 773, 775 (8th Cir. 1989); *Goichman v. Bloom (In re Bloom)*, 875 F.2d 224, 227 (9th Cir. 1989); *Leetien*, 309 F.3d at 1215; *Hardy v. United States (In re Hardy)*, 97 F.3d 1384, 1390 (11th Cir. 1996); *TransSouth Fin'l Corp. v. Sharon (In re Sharon)*, 234 B.R. 676, 687 (B.A.P. 6th Cir. 1999); *Davis*, 247 B.R. at 698; *Johnson*, 253 B.R. at 861; *In re Sielaff*, 164 B.R. 560, 568-69 (Bankr. W.D. Mich. 1994); *Gagliardi*, 290 B.R. at 818. *But see Kolberg v. Agricredit Acceptance Corp. (In re Kolberg)*, 199 B.R. 929, 933 (W.D. Mich. 1996) (indicating that "most courts have held that a willful violation requires proof that the creditor demonstrated 'egregious, intentional misconduct'" but citing only cases applying that standard to punitive damages). Willfulness does not require that the creditor intend to violate the automatic stay provision, *Kaneb*, 196 F.3d at 269, rather it requires that the acts which violate the stay be intentional. *Lansdale Family Rest., Inc.*, 977 F.2d at 829; *Skeen*, 248 B.R. at 317. Indeed, "where the creditor received actual notice of the automatic stay, courts must presume that the violation was deliberate." *Kaneb,* 196 F.3d at 269.

In this case, the Nicolleti law firm received notice of Read's bankruptcy filing one week before execution on the Judgment of Possession occurred. As an experienced and active collection firm, law firm personnel, including Salansky, were well aware of the import of the bankruptcy filing with respect to their ongoing judgment execution activities for Greentree. The only procedure in place at the Nicolleti law firm for stopping execution of judgment after notice of a debtor's bankruptcy petition being filed was to call the court officer with whom arrangements had been made to execute a particular judgment. ==Nicolleti was responsible for instituting adequate procedures to comply with § 362(a)== but testified that no procedure other than calling the court officer was necessary. Although legal assistant Dana Salansky left three voice mail messages for Hindman after learning of Read's bankruptcy, she never received confirmation that any of the messages had been received. There being no further procedure in place, she took no further steps

14

to notify Hindman of the bankruptcy or to withdraw the Nicolleti law firm's written request that he seize the manufactured home in accordance with the Order for Execution of Judgment. Unlike *Davis* cited by Defendants and discussed above, the Nicolleti law firm had taken an active role in obtaining Hindman to carry out the execution on the judgment, the state court in this case was never notified of Debtor's bankruptcy, and execution was carried out by Hindman before the Order for Execution of Judgment expired.[4] The procedure relied upon by the law firm to halt execution was unreasonable and insufficient in this case in light of the fact that receipt by Hindman of Salansky's messages was never confirmed as well as the fact that Salansky had also left voice mail messages for Hindman during the week before the law firm learned of Read's bankruptcy and Hindman had never responded to those messages.

The court finds that the Nicolleti law firm's failure to take effective action to halt the execution constitutes deliberate conduct with knowledge of the filing of a bankruptcy petition. As such, after receiving notice of Debtor's bankruptcy, the court concludes that the Nicolleti law firm engaged in a willful violation of the automatic stay. *See, e.g., Leetien*, 309 F.3d at 1215 (finding a willful violation by creditor's counsel for failing to timely dismiss or stay a state collection proceeding); *Johnson*, 253 B.R. at 861-62 (finding a willful violation when creditor and its counsel failed to take steps to discontinue wage garnishment); *In re Banks,* 253 B.R. 25, 30-31 (Bankr. E.D. Mich. 2000) (finding a willful violation where creditor and its lawyer failed to take necessary steps to have writ of possession vacated); *In re McCall-Pruitt*, 281 B.R. 910, 911 (Bankr. E.D. Mich. 2002)(court concludes that "respondent had a duty to halt *all* collection activities when the debtor filed for bankruptcy protection;" emphasis original).

Defendants try to shift the blame to Read and her counsel for failing to return phone calls placed by Greentree during the weeks or months before Read's bankruptcy petition was filed and for failing to take any affirmative steps themselves to vacate the Order of Execution of Judgment after the bankruptcy petition was filed. But courts overwhelmingly agree that it is the responsibility of the party that set in motion the proceeding to take the steps necessary to restore or maintain the status quo. *See, e.g., Leetien*, 309 F.3d at 1214; *Gagliardi*, 290 B.R. at 819; *Sams*, 106 B.R. at 490; *Timbs*, 178 B.R. at 996; *Banks*, 253 B.R. at 30. Furthermore, the failure of Read and her attorney to return phone calls is irrelevant where, as

---

[4] Although the original Order of Judgment for Possession Only, entered February 8, 1999, provided that execution on the judgment may not issue "if more than 28 days have passed from the date at signing unless there is further notice and hearing," [Pl. Ex. 3], after such notice and hearing, on April 15, 1999, the state court entered an Order of Execution on Judgment [Pl. Ex. 2]. That order contained no express limitation on the time of execution and did not otherwise expire until ninety days thereafter. *See* M.C.L. § 600.6002.

15

here, it is clear that the Nicolleti law firm, in the person of employee Dana Salansky, received actual notice of Read's bankruptcy one week before execution occurred, which was sufficient time to act effectively to assure that the execution not take place. Readily available alternative forms of communication with Hindman such as facsimile, express delivery and personal notification were never attempted. Again, the court emphasizes that voice mail communication with Hindman had already proven ineffective when notice of the Read bankruptcy petition was received by the Nicoletti law firm.

Nevertheless, the court finds that Nicolleti himself did not commit a "willful" violation of the stay since, as the court already found, Nicolleti did not personally receive notice of Read's bankruptcy petition until after execution by Hindman. Although Read does not dispute that Nicolleti had no personal knowledge of Plaintiff's bankruptcy, she argues that he is personally liable for the acts of his professional corporation under M.C.L. § 450.226. That section provides in relevant part: "Any officer, shareholder, agent or employee of a corporation organized under this act shall remain personally and fully liable and accountable for any negligent or wrongful acts or misconduct committed by him, or by any person under his direct supervision and control, while rendering professional service on behalf of the corporation *to the person for whom such professional services were being rendered*." M.C.L. § 450.226 (emphasis added). But the Nicolleti law firm was rendering professional services for its client, Greentree, and not for Read. Thus, M.C.L. § 450.226 does not apply. The court is aware of no other authority that would allow it to impute the knowledge of the principal (the Nicolleti law firm) to its agent (Nicolleti). *See S.O.G.-San Ore-Gardner v. Missouri Pacific R.R Co.,* 658 F.2d 562, 567 (8th Cir.1981) (stating that "it is well settled that an agent may rely upon the representations of his principal and that the principal's undisclosed knowledge is not imputed to him"); *Siharath v. Citifinancial Servs., Inc. (In re Siharath),* 285 B.R. 299, 304 (Bankr. D. Minn. 2002) (explaining that the imputed knowledge rule of agency "does not operate in the converse, and the agent cannot be imputed with the information which its principal has failed to give it"). Because Nicolleti did not act deliberately with knowledge of her bankruptcy, Read has failed to satisfy the willfulness standard under § 362(h) with respect to Nicolleti individually.

### C. Actual Damages

Having found the Nicolleti law firm's violation of the stay to be willful, § 362(h) mandates the award of actual damages, including costs and attorneys' fees, caused by the violation. *Daniels*, 316 B.R. at 354. Read seeks four categories of actual damages: (1) personal property loss, (2) lost wages, (3) emotional distress, and (4) costs and attorneys' fees.

is not entitled to indemnification under theories of common law or implied contractual indemnity. The Nicoletti law firm owed a duty to Read to take the steps necessary to halt execution of the judgment against her property, and its failure to do so resulted in Read's injury in this case. Under Michigan law, such active negligence precludes recovery on an indemnification claim. Hindman is entitled to judgment on this claim.

### IV. Hindman's Claim for Attorney Fees

In his Third Party Counter Complaint, Hindman alleges a claim for indemnification against the Nicolleti defendants and an entitlement to an award of reasonable attorney fees. Notwithstanding the fact that the only claims against Hindman in this proceeding were brought by the Nicolleti Defendants,[19] at trial, he asked that such fees be imposed against Read.[20] Generally, under the "American Rule," which applies to litigation in the bankruptcy courts, a prevailing litigant may not collect attorney's fee from his opponent unless authorized by federal statute or an enforceable contract between the parties. *In re Sheridan*, 105 F.3d 1164, 1166 (7th Cir. 1997). Hindman cites no authority in support of his claim for attorney fees. Finding no legal basis for such an award, Hindman's request for attorney fees will be denied. In addition, Hindman's indemnification claim will be dismissed as moot.

### CONCLUSION

For the foregoing reasons, the court finds that Read is entitled to judgment on the amended complaint in her favor against the Nicolleti law firm in the total amount of $30,799.40, which includes damages for personal property loss of $1,800.00, lost wages of $1,189.12, $23,729.00 in attorneys' fees and $4,081.28 in costs, and that Paul Nicolleti is entitled to judgment on the amended complaint in his favor. The court further finds that Al Hindman is entitled to judgment in his favor on the Third-Party Complaint. Hindman's counterclaims against the Nicolleti defendants for indemnification and/or contribution will be dismissed as moot. And finally, Hindman's claim for attorney fees against Read is denied.

---

[19] The court denied Read's motion to add Hindman as a co-defendant in this case. [Doc. # 108].

[20] Hindman's "Third Party Counter Complaint" alleges no claim against Plaintiff nor does it seek an award of attorney fees from Plaintiff.

_____
Mary Ann Whipple
United States Bankruptcy Judge

# STATE OF MICHIGAN

# COURT OF APPEALS

JEANNINE P. ANSLEY,

    Plaintiff-Appellee/Cross-Appellee,

v

CONSECO FINANCIAL SERVICING CORP.
and CONSECO SECURITIES, INC., a/k/a/
CONSECO,

    Defendants-Appellants,

and

NICOLETTI & ASSOCIATES, P.C.,

    Cross-Appellant.

UNPUBLISHED
December 17, 2002

No. 232266
Wayne Circuit Court
LC No. 00-000978-PD

Before: Jansen, P.J., and Holbrook, Jr., and Cooper, JJ.

PER CURIAM.

    Defendants Conseco Financial Servicing Corporation and Conseco Securities, Inc. ("Conseco") appeal as of right the orders granting summary disposition and judgment for plaintiff in the amount of $2,217 on her claims of trespass to chattels, claim and delivery and conversion. The Conseco defendants also appeal from the order granting plaintiff's motion for attorney fees and costs as sanctions in the amount of $25,598.24. In addition, defendant Nicoletti & Associates, P.C. ("Nicoletti"), counsel for Conseco, cross-appeals from the order awarding sanctions. We affirm.

    On December 7, 1996, Charles Sutton Ansley purchased a mobile home through a retail installment contract that was subsequently assigned to Conseco. On November 9, 1999, Ansley was killed in an automobile accident while at work and died intestate. At the time of Ansley's death, plaintiff, who was his former wife, had reconciled with him and was his fiancée. As a result, plaintiff had a substantial amount of her personal property and effects in Ansley's mobile home at the time of his death. However, scarcely one week after Ansley's death, Conseco took possession of his mobile home on November 15, 1999, securing the premises by changing the locks on the mobile home. According to Conseco, Ansley was in default on the installment contract because he missed the previous month's rent. In taking possession of the mobile home, Conseco seized control of all personal property found inside the mobile home, including

plaintiff's personal property. Conseco also denied plaintiff access to the home, and failed to return her belongings, reneging on an agreement to allow her access to the mobile home to reclaim her personal property.

Plaintiff filed a complaint against Conseco on January 11, 2001 to regain possession of her belongings, requesting a preliminary injunction and claiming damages based upon trespass to chattels, claim and delivery, and conversion. After a preliminary examination hearing on January 14, 2000, the trial court granted plaintiff's motion to allow her access to the mobile home to retrieve her personal property. Upon gaining entry to the mobile home, plaintiff discovered that various articles of her personal property were missing, prompting her to file a police report. Thereafter, plaintiff filed a motion for partial summary disposition pursuant to MCR 2.116(C)(10) as to her claims for trespass to chattels and claim and delivery. Following a hearing on June 30, 2000, the trial court granted plaintiff's motion and ordered Conseco to pay her $2,217 in damages. Specifically, the trial court, finding that Conseco's seizure of the mobile home and retention of plaintiff's personal property were unlawful, noted that Conseco's defense, as put forward by Nicoletti, was frivolous and encouraged plaintiff to file a motion for sanctions against both Conseco and Nicoletti.

Subsequently, plaintiff moved for summary disposition pursuant to MCR 2.116(C)(10) with regard to her conversion claim; she also filed a motion for sanctions against Conseco and Nicoletti pursuant to MCR 2.114, MCR 2.625(A)(2) and MCL 600.2591. After a hearing on December 1, 2000, the trial court, in an order entered on January 2, 2001, granted plaintiff's motion for summary disposition on her conversion claim based upon the fact that Conseco did not have the legal right to seize the mobile home or the personal property found therein. ==The trial court also granted plaintiff's request for sanctions in the amount of $25,598.24, finding that Conseco's defense as presented by its counsel Nicoletti was frivolous under MCR 2.114 and MCR 2.625(A)(2) because it was devoid of a legal or factual basis and was intended to harass plaintiff.==

On appeal, Conseco first contends that the trial court erred in granting summary disposition in favor of plaintiff with respect to her claims of trespass to chattels, claim and delivery and conversion. We disagree.

A trial court's determination of a motion for summary disposition is reviewed de novo on appeal. *Peters v Dep't of Corrections,* 215 Mich App 485, 486; 546 NW2d 668 (1996). In reviewing a motion for summary disposition brought pursuant to MCR 2.116(C)(10), this Court considers affidavits, pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties in a light most favorable to the nonmoving party. *Quinto v Cross & Peters Co,* 451 Mich 358, 362; 547 NW2d 314 (1996). This Court may grant a motion for summary disposition pursuant to MCR 2.116(C)(10) if the affidavits or other documentary evidence show that there is no genuine issue with respect to any material fact, and the moving party is entitled to judgment as a matter of law. MCR 2.116(C)(10); MCR 2.116(G)(4); *Quinto, supra,* 451 Mich 362.

To establish a claim for trespass to chattels, also known as trespass to personalty, a plaintiff must show a wrongful exercise of dominion or control over the plaintiff's property. See *Burns v Kirkpatrick,* 91 Mich 364; 51 NW 893 (1892).

"getting ready to be referred" for a claim and delivery action.  Therefore, Conseco failed to raise a genuine issue of material fact that it had a legal right to repossess the mobile home.

Contrary to Conseco's claim, the trial court did not err in awarding damages to plaintiff in the amount of $1,700 for her loss of possession, use and enjoyment of her personal property during the period of sixty-eight days in which defendant retained her property.  The trial court also did not err in ordering Conseco to pay damages in the amount of $517 for the property that was missing from the mobile home.  Here, the damage award was reasonably supported by the evidence, and did not represent remote, contingent, or speculative damages.  See *Hoffman v. Auto Club Ins*, 211 Mich App 55, 108; 535 NW2d 529 (1995).

Finally, the trial court did not err in granting sanctions pursuant to MCR 2.114(D) and MCR 2.114(F).  "This Court will not disturb a trial court's finding that a claim was frivolous unless the finding is clearly erroneous."  *In re Attorney Fees & Costs*, 233 Mich App 694, 701; 593 NW2d 589 (1999).  In addition "[a] trial court's decision regarding whether a party or attorney has violated the signature requirements of MCR 2.114(D) . . . is reviewed for clear error."  *Hog Producers v Consumers Power,* 234 Mich App 72, 91; 592 NW2d 112 (1999).  "A trial court's decision is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made."  *In re Attorney Fees, supra,* 233 Mich App 701.  Pursuant to MCR 2.114(E), the court may sanction either the attorney or represented party for violations of MCR 2.114(D).  Moreover, attorney fees may be awarded if a defense is frivolous pursuant to MCR 2.114(F).  An action is frivolous if one of the following conditions is met:

> (i) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.
>
> (ii) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.
>
> (iii) The party's legal position was devoid of arguable legal merit.  [MCL 600.2591(3)(a).]

In this case, the trial court did not err in sanctioning Conseco and Nicoletti for violations of the signature requirements under MCR 2.114(D) and for making a frivolous defense under MCR 2.114(F) because defendants failed to provide either a factual basis for the claim that Ansley was in default or a legal basis that Conseco had a right or title to plaintiff's personal effects.

Affirmed.

/s/ Kathleen Jansen
/s/ Donald E. Holbrook, Jr.
/s/ Jessica R. Cooper

-4-

Reed v. Countrywide Home Loans Inc., 042512 MICA, 305749

**Ulysses D Reed**

**v.**

**Countrywide Home Loans Inc.**

**No. 305749**

**Court of Appeals of Michigan**

**April 25, 2012**

    L.C. No. 09-020722-CH

**ORDER**

Elizabeth L. Gleicher, Judge, acting under MCR 7.217 and MCR 7.219(I), orders:

    The above appeal is DISMISSED for want of prosecution, appellant having failed to timely file the brief on appeal.

    Paul J. Nicoletti, retained counsel for appellant, shall pay to the Clerk of this Court, within 21 days of the certification of this order, court costs in the sum of $250 for allowing this appeal to appear on the involuntary dismissal docket. Such costs are personal to the attorney and shall not be charged back to the client or to the State.