UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT INDIANA

| | |
|---|---|
| MALIBU MEDIA, LLC,<br>Plaintiff,<br><br>v.<br><br><br>ANDREW LEIGHTNER, KEVIN DEMPSEY, KENNETH REESE, CARL RUDY, LUCAS SHULTZ, LUCIAN SAVULESCU, DAN COROIAN, JIM GENDRON, JEREMY COTTON, NEVILLE FERNANDES, DANIEL PITTMAN, JAY GARRETT, JERRY RICHEY, CONNIE FELONGCO, TERESA STEPHENSON, KIRAN POULSEN, CHRIS MINOR, SIWEI LI, DERICK BROOKS, CLARISSA HENDERSHOT, CHRIS MINOR, and JOHN DOES 2, 14, 16, 17, 20, 23, 24 and 29,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>) Case No. 1:12-cv-00845-TWP-MJD<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**REPLY IN SUPPORT OF
MOTION TO REQUIRE PLAINTIFF TO POST BOND
FOR COSTS AND EXPENSES**

Defendants Chris Minor and Teresa Stephenson ("Defendants") submit their reply in support of their Motion To Require Plaintiff To Post Bond.

**I.   INTRODUCTION.**

Two aspects of Malibu's Opposition are stunning as they *actually support* requiring it to post a bond.

**A.   Malibu's Failure To Conduct A Reasonable Pre-Suit Investigation Warrants Requiring It To Post Bond.**

Malibu concedes that it lacks evidence of infringement by Defendants' when it states:

- "Defendants *or someone in their home* are guilty of infringement" (PgID 1245); and

1

- "Plaintiff believes *the name of the true infringer*, - if not Defendant but a family member of Defendant's – *will come out*.  *At that point* Plaintiff will substitute in the true infringer as the Defendant.  If either Defendant wishes to provide Plaintiff with this information now, *Plaintiff will immediately substitute in the name of the true infringer"*. (PgID 1246).

Malibu obviously does not know whether it has sued "infringers" despite having been told by courts about "the serious questions about plaintiffs ability to properly identify defendants based solely upon their IP addresses."[1]  Malibu is using this lawsuit as a "fishing expedition" to make up for its lack of a Rule 11-compliant pre-suit investigation, and the Defendants are victims of Malibu's laziness.  If Malibu ultimately dismisses the present Defendants as Malibu portends, they will be entitled to recover their attorney's fees.  This court should follow the lead of other courts and stay this action and *sua sponte* order Malibu to show cause why it has not violated Rule 11.[2]  But to the extent the court does not do so, it should *at least* require Malibu to post bond.

### B.     Malibu's Own Evidence Shows It Can Afford To Post A Bond.

To oppose Defendants' Motion, Malibu had a chance to *submit evidence* that it was unable to post a bond.  However, *its own evidence actually shows that it can easily afford to post a bond*.  Malibu submitted a Declaration of Colette Field dated February 19, 2013.  The Field

---

[1] "This Court's Order cataloged abusive tactics by plaintiffs in related actions against John Doe defendants, and expressed, in no uncertain terms, this Court's concerns about the conduct of this litigation going forward, particularly in light of **the serious questions about plaintiffs ability to properly identify defendants based solely upon their IP addresses**. As such, it is astonishing that counsel failed to observe the precautions established in the Order. On this record, it is difficult to ascertain whether this apparent failure was deliberate, or simply the result of gross inattention." *Malibu Media LLC v. Does 1-26;* Case 2:12-cv-01147-JS-GRB (EDNY, July 31, 2012) (Brown, G.) (Exhibit 2).
[2] *Malibu Media v. John Doe*, Order Staying Cases And To Show Cause, Case 3:13-cv-205-SLC (May 28, 2013, WD WI) (Exhibit 1).

2

Declaration states that Malibu charges "a monthly recurring subscription fee of $19.95," and "[c]urrently, we have tens of thousands of members." (PgID1262-63). Given *a minimum* of 20,000 members, this equates to $199,000 per month, or $2,388,000 annually. There is nothing in the Field Declaration hinting at an inability to post bond; to the contrary, it appears intended to portray Malibu as a highly successful and profitable enterprise. Malibu has sufficient wealth to hire an army of imaginative lawyers to file at least 866 suits across the country. (PgID 1093). Malibu's opposition vacillates on the issue of its ability to pay a bond. At one point, it states that Malibu has "viewers in the hundreds of millions," (PgID 1243) "has significant assets to pay for costs and fees," and "invests millions of dollars into its intellectual property." (PgID 1248). These facts contradict Malibu's claim that if it were required to post a bond, that "Plaintiff would simply be unable to afford to sue even a handful of infringers per year." (PgID 1260). In the end, Malibu has utterly failed to proffer any actual evidence that it is unable to post a bond.

**II.   REPLY TO MALIBU'S REMAINING ARGUMENTS.**

   **A.   Requiring Malibu To Post Bond Is *Within The Discretion Of The Court*.**

Malibu does not dispute the issue of requiring bond is *within the discretion* of the court.

   **B.   Plaintiff Proffers No Evidence That It Is Unable To Post A Bond**

The only *legal* point Plaintiff makes regarding how this court should exercise its discretion is the citation of *Gay v. Chandra*, 682 F.3d 590 (7th Cir. 2012) for the proposition that "a court must consider a party's ability to pay. A court abuses its discretion when it requires a cost bond that it knows the party cannot afford." Defendants concede that this is the proper standard, but notes that the Plaintiff in *Gay* was an indigent prisoner who could not afford to post bond. This case provides no guidance here, because Malibu readily admits that it is a successful, asset-rich company. Moreover, Malibu is capable of litigating across the country, even if its

claim are, as Judge Wright has noted, based on "outmaneuver[ing] the legal system" and a "nexus of antiquated copyright laws, paralyzing social stigma, and unaffordable defense costs."

### C.      Malibu Fails to Consider Utilization Of DCMA Take Down Notices.

At PgID 1241, Malibu claims that its porn movies are being copied on the Internet, stating, "Plaintiff has no other way to make the infringement stop and seek recourse for its losses than to bring a suit like the one before this court." (sic)  Malibu does not cite authority for the proposition that the availability of alternate remedies is a factor that should be considered in requiring a Plaintiff to post bond.  However, it is wrong in asserting that it has no other remedies.

Since 1998 the Copyright Act has provided a regime to "make the infringement stop," and it is what all the major movie studios use. When an Internet site is believed to be hosting infringing content, a copyright owner may simply issue a "DCMA Take Down Notice" to the Internet Service Provider or hosting company pursuant to 17 USC §512.  This does not require a lawsuit or subpoena, and is far more efficient than hiring an army of lawyers to file 866 separate lawsuits across the country.

### D.      Malibu's Probability Of Success.

Defendants' brief argues that the first element to be considered when posting a bond, the plaintiff's likelihood of success, has been found to be lacking by other courts considering Bittorrent cases.  Malibu makes several arguments designed to show the strength of its case, but they are unavailing.

First, Malibu argues that if the defendant didn't infringe, someone else in their household must have, and if they find out, Malibu will "immediately substitute in the name of the true

4

infringer." (PgID 1245-46). As discussed above, this actually cuts *against* finding a probability of success against the present Defendants.

Next, Malibu argues that it's "Technology is Reliable," and makes multiple references to an expert declaration of "Tobias Feiser Ex. A." (PgID 1247). However, Malibu has not submitted any declaration of "Tobias Feiser" – Exhibit A is the declaration of Collette Fields. Similarly, Malibu's Opposition goes on to reference "the digital media file identified by the hash value set forth on Exhibit B" (PgID 1248). However, Exhibit B does not have a "hash value," it is an article titled The erotic revolution. It describes how Malibu made a movie on the island of Ibiza off the coast of Spain starring "a plucky Libor" named "Mr. X." (PgID 1267-71). Given that it was a movie, it is no surprise that Mr. X manifests his "probability of success" with a "tanned Czech beauty" named "Baby." However, his travails did not involve any "hash" (fortunately) and it is unclear how Mr. X's success foretells any "probability of success" for Malibu in this infringement litigation.

### E.     The Reasonable Extent of Security From The Defendant's Perspective.

Defendants' motion argues that a reasonable bond would be $250,000 for each of the defendants, Stephenson and Minor, or $500,000 total. This is actually less than the $600,000 *per defendant* Malibu's counsel has estimated. (PgID 1165). Malibu counters that "in the event either is found not to be guilty, Plaintiff has significant assets to pay for costs and fees" because it "is a successful multimillion dollar company." (PgID 1248). Defendants are pleased to hear this, and submit that Malibu's wealth and revenues warrant setting bond at the $500,000 requested by Defendants. Malibu has not proffered any evidence that it is unable to post this amount.

Next, Malibu argues that the amount of bond sought by Defendants overestimates the likely fees, perhaps because there are multiple defendants in the case. (PgID 1249). To the contrary, the amount of work required for a case increases exponentially as the number of parties increase, as each party must serve all others with discovery and track motions filed by co-defendants. In any event, Defendant's request is modest compared to Malibu's $600,000 estimate.

Malibu next argues that attorney's fees under the copyright Act are discretionary. While this is correct, in the Seventh Circuit the presumption in favor of awarding fees to a prevailing defendant is "very strong." *Assessment Technologies of Wisconsin, LLC v. Wire Data, Inc.*, 361 F.3d 434, 436 (7th Cir. 2004). The rationale is that:

> the prevailing party in a copyright case in which the monetary stakes are small should have a presumptive entitlement to an award of attorney's fees. When the prevailing party is the defendant, who by definition receives not a small award but no award, the presumption in favor of awarding fees is very strong. For without the prospect of such an award, the party might be forced into a nuisance settlement or deterred altogether from exercising his rights." *Id.* at 436

Next, Malibu attempts to distinguish *AF Holdings LLC v. Trinh*, Case No. C 12-02393-CRB, Order Granting Motion to Post Undertaking, Nov. 9, 2012 (N.D. Cal., 2012) (PgID 1189). This is another BitTorrent infringement case, where the court ordered the Plaintiff to post a bond. Malibu first observes that in *AF Holdings*, the court noted that the Plaintiff was organized in the Federation of Saint Kitts and Nevis. However, the bond in AF Holdings was sought under California Code Civ. Proc. § 1030(a), which allows for bond for any case when the plaintiff "resides out of the state." (PgID 1190). Here, Malibu is a California LLC, so the rationale of AF Holdings, actually supports requiring a bond.

6

Next, Malibu observes that it has tried a case and was "awarded over $100,000 in damages." (PgID 1251). Actually, the court only awarded "$750 per infringement," and the balance represented enhanced award to punish the defendant for obstruction of justice, destroying evidence and willfulness. (PgID 1317) Putting that aside, that result has no bearing on this case, as Malibu does not allege any such activity occurred here.

Malibu next discusses *Gay v. Chandra*, 682 F.3d 590 (7th Cir. 2012). (PgID 1252). As discussed in greater detail above at p. 3, *Gay* actually militates in favor of requiring Malibu to post a bond, since Malibu admits that it has substantial wealth and revenues.

Next, Malibu asserts it may have to "dismiss a significant amount of its cases, because it cannot afford to post a bond in all of its cases." (PgID 1252). However, Malibu cites no authority for the proposition that a plaintiff's other litigation should be considered when deciding whether a plaintiff should be required to post bond. Indeed, this would be counter-productive. Such a rule would actually encourage a plaintiff to file multiple lawsuits regardless of their merit, and then argue that in each one it should not be obligated to post a bond because it has filed so many lawsuits.

Malibu goes on to generally argue that "care must be taken not to deprive a plaintiff of access to the federal courts." (PgID 1253). Defendants acknowledge this authority, but Malibu has utterly failed to proffer any *evidence* of poverty. To the contrary, its 866 lawsuits show that it has all the access to the federal courts anyone could want.

### F. The Reasonable Extent of Security From the Plaintiff's Perspective.

Malibu argues that "if it were forced to pay a potential award of attorney's fees up front for every infringer it brought suit against, it would not be capable of protecting its copyrights." (PgID 1254). Malibu misapprehends what a "bond" is. Defendants' do not ask Malibu to "pay"

7

a bond, but to "post" a bond. If Malibu wins, it will get it back, with interest. It has the wherewithal to do this. Moreover, Malibu can still "protect its copyrights" by serving DCMA Take Down Notices. This is what the big studios do – we don't see Universal, Paramount and Pixar constipating court dockets with hundreds of infringement suits. Just because Malibu has chosen to exploit the "paralyzing social stigma" of porn to "enforce" its copyrights on a massive scale does not mean that individual defendants should be denied the safeguards courts find, in their discretion, to further the interests of justice.

Next, Malibu states, "In order for litigation to have any deterrent effect, Plaintiff must sue enough people for an individual to have a reasonable belief that if they break the law, they will be penalized." If this isn't extortion through litigation, what is? Malibu actually admits that one of its motivations is to "sue enough people" to create a "deterrent effect." Yet, Malibu charges forward with these cases, ignoring "the serious questions about plaintiff's ability to properly identify defendants based solely upon their IP addresses,"[3] and despite Judge Wright's condemnation of BitTorrent cases. Malibu's admission does not belong it the section of its brief discussing the Reasonable Extent of Security, From the Plaintiff's Perspective. However, it is highly relevant in discussing the "Purpose of the Suit" factor, which should be considered as part of the "Probability of Success."

### G.     Malibu's General Discussion of Copyright Infringement Is Not Relevant.

Malibu devotes pages 16-20 of its Opposition to a general discussion of types of activity that can constitute copyright infringement, and how copyright laws can provide societal benefits.

---

[3] *Malibu Media LLC v. Does 1-26, supra.*

Defendants agree with this overview, but do not apprehend how this vague discussion applies to the present motion for Malibu to post a bond.

### III. CONCLUSION

Defendants request that Plaintiff Malibu be required to post a $250,000 bond for each of them ($500,000 total) within ten (10) days of the Court's order at the peril of suffering dismissal.

Respectfully submitted,

By: s/Paul B. Overhauser
Paul B. Overhauser
**OVERHAUSER LAW OFFICES LLC**
740 W. Green Meadows Dr., Suite 300
Greenfield, IN  46140-4019
Phone: 317-891-1500
Fax: 866-283-8549
Attorneys for Defendants Teresa Stephenson and Chris Minor
© 2013

### EXHIBITS

| | |
|---|---|
| 1 | *Malibu Media v. John Doe*, Order Staying Cases And To Show Cause, Case 3:13-cv-205-SLC (May 28, 2013, WD WI) |
| 2 | *Malibu Media LLC v. Does 1-26*; Case 2:12-cv-01147-JS-GRB (EDNY, July 31, 2012) (Brown, G.) (Exhibit 2). |

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing is being filed electronically, and notice hereof will automatically be sent to all counsel of record that participate in electronic filing, by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

By: s/Paul B. Overhauser
Paul B. Overhauser