**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT INDIANA**

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action Case No. <u>1:12-cv-00845-TWP-MJD</u> |
| | ) | |
| v. | ) | |
| | ) | |
| ANDREW LEIGHTNER, KENNETH REESE, | ) | |
| LUCIAN SAVULESCU, DAN COROIAN, | ) | |
| JEREMY COTTON, NEVILLE FERNANDES, | ) | |
| DANIEL PITTMAN, JERRY RICHEY, | ) | |
| CONNIE FELONGCO, TERESA | ) | |
| STEPHENSON, KIRAN POULSEN, | ) | |
| CHRIS MINOR, SIWEI LI, DERICK | ) | |
| BROOKS, KAREN GARRETT and | ) | |
| JOHN DOES 16, 17, 20, 23, 24 and 29. | ) | |
| | ) | |
| Defendants. | ) | |

**FOURTH AMENDED COMPLAINT**

Plaintiff, Malibu Media, LLC, sues Teresa Stephenson, Chris Minor, Siwei Li, Derick Brooks, and Karen Garrett, and alleges:

**Introduction**

1.      This matter arises under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 et seq. (the "Copyright Act").

2.      Through this suit, Plaintiff alleges each Defendant is liable for direct copyright infringement in violation of 17 U.S.C. §§ 106 and 501.

**Jurisdiction**

3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question); and 28 U.S.C. § 1338 (patents, copyrights, trademarks and unfair competition).

1

4.      Plaintiff obtained Defendants' identities in response to a subpoena served on their respective internet service providers ("ISPs") in this litigation.

## Parties

5.      Plaintiff is a limited liability company organized and existing under the laws of the State of California and has its principal place of business located at 409 W. Olympic Boulevard, Suite 501, Los Angeles, CA 90015.

6.      Teresa Stephenson is an individual residing at 600 W High Street, Pendleton, IN 46064.

7.      Chris Minor is an individual residing at 1208 N Washington Street, Danville, IN 46122.

8.      Siwei Li is an individual residing at 2427 Neil Armstrong, Apartment 1A, West Lafayette, IN 47906.

9.      Derick Brooks is an individual residing at 529 S 9th Street, Lafayette, IN 41901.

10.      Karen Garrett is an individual residing at 5108 Eastbourne Drive, Indianapolis, IN 46226.

## Factual Background

11.      Each Defendant is a persistent online infringer of Plaintiff's copyrights.  Indeed, each Defendant's IP address as set forth on Exhibits A-E was used to illegally distribute each of the copyrighted movies set forth on Exhibits 1-5.

12.      Plaintiff is the registered owner of the copyrights set forth on Exhibits 1-5 (the "Copyrights-in-Suit").

II.      *Defendants Used BitTorrent To Infringe Plaintiff's Copyrights*

13.       BitTorrent is one of the most common peer-to-peer file sharing protocols (in

2

other words, set of computer rules) used for distributing large amounts of data; indeed, it has been estimated that users using the BitTorrent protocol on the internet account for over a quarter of all internet traffic.  The creators and users of BitTorrent developed their own lexicon for use when talking about BitTorrent; a copy of the BitTorrent vocabulary list posted on www.Wikipedia.com is attached as Exhibit F.

14.     BitTorrent's popularity stems from its ability to distribute a large file without creating a heavy load on the source computer and network.  In short, to reduce the load on the source computer, rather than downloading a file from a single source computer (one computer directly connected to another), the BitTorrent protocol allows users to join a "swarm" of host computers to download and upload from each other simultaneously (one computer connected to numerous computers).

A.     *Each Defendant Installed a BitTorrent Client onto his or her Computer*

15.     Each Defendant installed a BitTorrent Client onto his or her computer.

16.     A BitTorrent "Client" is a software program that implements the BitTorent protocol.  There are numerous such software programs including μTorrent and Vuze, both of which can be directly downloaded from the internet.  See www.utorrent.com and http://new.vuze-downloads.com/.

17.     Once installed on a computer, the BitTorrent "Client" serves as the user's interface during the process of uploading and downloading data using the BitTorrent protocol.

B.     *The Initial Seed, Torrent, Hash and Tracker*

18.     A BitTorrent user that wants to upload a new file, known as an "initial seeder," starts by creating a "torrent" descriptor file using the Client he or she installed onto his or her computer.

3

19.     The Client takes the target computer file, here the copyrighted Work, and divides it into identically sized groups of bits known as "pieces."

20.     The Client then gives each one of the computer file's pieces, in this case, pieces of the copyrighted Work, a random and unique alphanumeric identifier known as a "hash" and records these hash identifiers in the torrent file.

21.     When another peer later receives a particular piece, the hash identifier for that piece is compared to the hash identifier recorded in the torrent file for that piece to test that the piece is error-free.  In this way, the hash identifier works like an electronic fingerprint to identify the source and origin of the piece and that the piece is authentic and uncorrupted.

22.     Torrent files also have an "announce" section, which specifies the URL (Uniform Resource Locator) of a "tracker," and an "info" section, containing (suggested) names for the files, their lengths, the piece length used, and the hash identifier for each piece, all of which are used by Clients on peer computers to verify the integrity of the data they receive.

23.     The "tracker" is a computer or set of computers that a torrent file specifies and to which the torrent file provides peers with the URL address(es).

24.     The tracker directs a peer user's computer to other peer user's computers that have particular pieces of the file, here the copyrighted Work, on them and facilitates the exchange of data among the computers.

25.     Depending on the BitTorrent Client, a tracker can either be a dedicated computer (centralized tracking) or each peer can act as a tracker (decentralized tracking).

*C.*     *Torrent Sites*

26.     "Torrent sites" are websites that index torrent files that are currently being made available for copying and distribution by people using the BitTorrent protocol.   There are

4

numerous    torrent    websites,    including    www.TorrentZap.com,    www.Btscene.com,
and www.ExtraTorrent.com.

27.    Each Defendant went to a torrent site to upload and download Plaintiff's
copyrighted Works.

D.    *Uploading and Downloading a Work Through a BitTorrent Swarm*

28.    Once the initial seeder has created a torrent and uploaded it onto one or more
torrent sites then other peers begin to download and upload the computer file to which the torrent
is linked (here the copyrighted Work) using the BitTorrent protocol and BitTorrent Client that
the peers installed on their computers.

29.    The BitTorrent protocol causes the initial seed's computer to send different pieces
of the computer file, here the copyrighted Work, to the peers seeking to download the computer
file.

30.    Once a peer receives a piece of the computer file, here a piece of the Copyrighted
Work, it starts transmitting that piece to the other peers.

31.    In this way, all of the peers and seeders work together in what is called a
"swarm."

32.    Here, each Defendant participated in the same swarm and directly interacted and
communicated with other members of that swarm through digital handshakes, the passing along
of computer instructions, uploading and downloading, and by other types of transmissions.

33.    In this way, and by way of example only, one initial seeder can create a torrent
that breaks a movie up into hundreds or thousands of pieces saved in the form of a computer file,
like the Work here, upload the torrent onto a torrent site, and deliver a different piece of the

copyrighted Work to each of the peers.  The recipient peers then automatically begin delivering the piece they just received to the other peers in the same swarm.

34.     Once a peer, here a Defendant, has downloaded the full file, the BitTorrent Client reassembles the pieces and the peer is able to view the movie.  Also, once a peer has downloaded the full file, that peer becomes known as "an additional seed" because it continues to distribute the torrent file, here the copyrighted Work.

> E.     *Plaintiff's Computer Investigators Identified Each of the Defendants' IP Addresses as Participants in a Swarm That Was Distributing Plaintiff's Copyrighted Work*

49.     Plaintiff retained IPP, Limited ("IPP") to identify the IP addresses that are being used by those people that are using the BitTorrent protocol and the internet to reproduce, distribute, display or perform Plaintiff's copyrighted works.

50.     IPP used forensic software named INTERNATIONAL IPTRACKER v1.2.1 and related technology enabling the scanning of peer-to-peer networks for the presence of infringing transactions.

51.     IPP extracted the resulting data emanating from the investigation, reviewed the evidence logs, and isolated the transactions and the IP addresses associated therewith for the files identified by the hash values listed on Exhibits A-E for each of the Defendants.

52.     The IP addresses, unique hash values and hit dates contained on Exhibits A-E accurately reflect what is contained in the evidence logs, and show each Defendant had copied a piece of Plaintiff's copyrighted Works identified by the unique hash values.

53.     Through each of the transactions, each of the Defendant's computers used their identified IP addresses to connect to the investigative server in order to transmit a full copy, or a portion thereof, of a digital media file identified by the unique hash values.

54.     IPP's agent analyzed each BitTorrent "piece" distributed by each IP address listed on Exhibits A-E and verified that re-assemblage of the pieces using a BitTorrent Client results in a fully playable digital motion picture of the Work.

55.     IPP's agent viewed the Works side-by-side with the digital media file that correlates to the unique hash value and determined that they were identical, strikingly similar or substantially similar.

## Miscellaneous

56.     All conditions precedent to bringing this action have occurred or been waived.

57.     Plaintiff retained counsel to represent it in this matter and is obligated to pay said counsel a reasonable fee for its services.

## COUNT I
## Direct Infringement Against Teresa Stephenson

58.     The allegations contained in paragraphs 1-57 are hereby re-alleged as if fully set forth herein.

59.     Plaintiff is the owner of the Registrations for the Copyrights-in-Suit listed on Exhibit 1 which contain original works of authorship.

60.     By using the BitTorrent protocol and a BitTorrent Client and the processes described above, Defendant copied the constituent elements of the Copyrights-in-Suit that are original.

61.     Plaintiff did not authorize, permit or consent to Defendant's copying of its Works.

62.     As a result of the foregoing, Defendant violated Plaintiff's exclusive right to:

(A)     Reproduce the Work in copies, in violation of 17 U.S.C. §§ 106(1) and 501;

(B)     Redistribute copies of the Work to the public by sale or other transfer of ownership, or by rental, lease or lending, in violation of 17 U.S.C. §§ 106(3) and 501;

(C)      Perform the copyrighted Work, in violation of 17 U.S.C. §§ 106(4) and 501, by showing the Work's images in any sequence and/or by making the sounds accompanying the Work audible and transmitting said performance of the Work, by means of a device or process, to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definitions of "perform" and "publically" perform); and

(D)      Display the copyrighted Work, in violation of 17 U.S.C. §§ 106(5) and 501, by showing individual images of the Work nonsequentially and transmitting said display of the Work by means of a device or process to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definition of "publically" display).

63.      Defendant's infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

**WHEREFORE,** Plaintiff respectfully requests that the Court:

(A)      Permanently enjoin Defendant and all other persons who are in active concert or participation with Defendant from continuing to infringe Plaintiff's copyrighted Work;

(B)      Order that Defendant delete and permanently remove the torrent file relating to Plaintiff's copyrighted Work from each of the computers under Defendant's possession, custody or control;

(C)      Order that Defendant delete and permanently remove the copy of the Work Defendant has on the computers under Defendant's possession, custody or control;

(D)      Award Plaintiff statutory damages in the amount of $750 per work, pursuant to 17 U.S.C. § 504-(a) and (c);

(E)      Award Plaintiff its reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

(F)     Grant Plaintiff any other and further relief this Court deems just and proper.

**COUNT II**
**Direct Infringement Against Chris Minor**

64.     The allegations contained in paragraphs 1-57 are hereby re-alleged as if fully set forth herein.

65.     Plaintiff is the owner of the Registrations for the Copyrights-in-Suit listed on Exhibit 2 which contain original works of authorship.

66.     By using the BitTorrent protocol and a BitTorrent Client and the processes described above, Defendant copied the constituent elements of the Copyrights-in-Suit that are original.

67.     Plaintiff did not authorize, permit or consent to Defendant's copying of its Works.

68.     As a result of the foregoing, Defendant violated Plaintiff's exclusive right to:

(A)     Reproduce the Work in copies, in violation of 17 U.S.C. §§ 106(1) and 501;

(B)     Redistribute copies of the Work to the public by sale or other transfer of ownership, or by rental, lease or lending, in violation of 17 U.S.C. §§ 106(3) and 501;

(C)     Perform the copyrighted Work, in violation of 17 U.S.C. §§ 106(4) and 501, by showing the Work's images in any sequence and/or by making the sounds accompanying the Work audible and transmitting said performance of the Work, by means of a device or process, to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definitions of "perform" and "publically" perform); and

(D)     Display the copyrighted Work, in violation of 17 U.S.C. §§ 106(5) and 501, by showing individual images of the Work nonsequentially and transmitting said display of the Work by means of a device or process to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definition of "publically" display).

69.     Defendant's infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

**WHEREFORE,** Plaintiff respectfully requests that the Court:

(A)     Permanently enjoin Defendant and all other persons who are in active concert or participation with Defendant from continuing to infringe Plaintiff's copyrighted Work;

(B)     Order that Defendant delete and permanently remove the torrent file relating to Plaintiff's copyrighted Work from each of the computers under Defendant's possession, custody or control;

(C)     Order that Defendant delete and permanently remove the copy of the Work Defendant has on the computers under Defendant's possession, custody or control;

(D)     Award Plaintiff statutory damages in the amount of $750 per work, pursuant to 17 U.S.C. § 504-(a) and (c);

(E)     Award Plaintiff its reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

(F)     Grant Plaintiff any other and further relief this Court deems just and proper.

## COUNT III
## Direct Infringement Against Siwei Li

70.     The allegations contained in paragraphs 1-57 are hereby re-alleged as if fully set forth herein.

71.     Plaintiff is the owner of the Registrations for the Copyrights-in-Suit listed on Exhibit 3 which contain original works of authorship.

72.     By using the BitTorrent protocol and a BitTorrent Client and the processes described above, Defendant copied the constituent elements of the Copyrights-in-Suit that are original.

73.     Plaintiff did not authorize, permit or consent to Defendant's copying of its Works.

74.     As a result of the foregoing, Defendant violated Plaintiff's exclusive right to:

(A)     Reproduce the Work in copies, in violation of 17 U.S.C. §§ 106(1) and 501;

(B)     Redistribute copies of the Work to the public by sale or other transfer of ownership, or by rental, lease or lending, in violation of 17 U.S.C. §§ 106(3) and 501;

(C)     Perform the copyrighted Work, in violation of 17 U.S.C. §§ 106(4) and 501, by showing the Work's images in any sequence and/or by making the sounds accompanying the Work audible and transmitting said performance of the Work, by means of a device or process, to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definitions of "perform" and "publically" perform); and

(D)     Display the copyrighted Work, in violation of 17 U.S.C. §§ 106(5) and 501, by showing individual images of the Work nonsequentially and transmitting said display of the Work by means of a device or process to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definition of "publically" display).

75.     Defendant's infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

**WHEREFORE,** Plaintiff respectfully requests that the Court:

(A)     Permanently enjoin Defendant and all other persons who are in active concert or participation with Defendant from continuing to infringe Plaintiff's copyrighted Work;

(B)     Order that Defendant delete and permanently remove the torrent file relating to Plaintiff's copyrighted Work from each of the computers under Defendant's possession, custody or control;

(C)     Order that Defendant delete and permanently remove the copy of the Work

Defendant has on the computers under Defendant's possession, custody or control;

(D)     Award Plaintiff statutory damages in the amount of $750 per work, pursuant to 17 U.S.C. § 504-(a) and (c);

(E)     Award Plaintiff its reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

(F)     Grant Plaintiff any other and further relief this Court deems just and proper.

## COUNT IV
## Direct Infringement Against Derick Brooks

76.     The allegations contained in paragraphs 1-57 are hereby re-alleged as if fully set forth herein.

77.     Plaintiff is the owner of the Registrations for the Copyrights-in-Suit listed on Exhibit 4 which contain original works of authorship.

78.     By using the BitTorrent protocol and a BitTorrent Client and the processes described above, Defendant copied the constituent elements of the Copyrights-in-Suit that are original.

79.     Plaintiff did not authorize, permit or consent to Defendant's copying of its Works.

80.     As a result of the foregoing, Defendant violated Plaintiff's exclusive right to:

(A)     Reproduce the Work in copies, in violation of 17 U.S.C. §§ 106(1) and 501;

(B)     Redistribute copies of the Work to the public by sale or other transfer of ownership, or by rental, lease or lending, in violation of 17 U.S.C. §§ 106(3) and 501;

(C)     Perform the copyrighted Work, in violation of 17 U.S.C. §§ 106(4) and 501, by showing the Work's images in any sequence and/or by making the sounds accompanying the Work audible and transmitting said performance of the Work, by means of a device or process, to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's

12

definitions of "perform" and "publically" perform); and

(D)    Display the copyrighted Work, in violation of 17 U.S.C. §§ 106(5) and 501, by showing individual images of the Work nonsequentially and transmitting said display of the Work by means of a device or process to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definition of "publically" display).

81.    Defendant's infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

**WHEREFORE,** Plaintiff respectfully requests that the Court:

(A)    Permanently enjoin Defendant and all other persons who are in active concert or participation with Defendant from continuing to infringe Plaintiff's copyrighted Work;

(B)    Order that Defendant delete and permanently remove the torrent file relating to Plaintiff's copyrighted Work from each of the computers under Defendant's possession, custody or control;

(C)    Order that Defendant delete and permanently remove the copy of the Work Defendant has on the computers under Defendant's possession, custody or control;

(D)    Award Plaintiff statutory damages in the amount of $750 per work, pursuant to 17 U.S.C. § 504-(a) and (c);

(E)    Award Plaintiff its reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

(F)    Grant Plaintiff any other and further relief this Court deems just and proper.

**COUNT V**
**Direct Infringement Against Karen Garrett**

82.    The allegations contained in paragraphs 1-57 are hereby re-alleged as if fully set forth herein.

83.     Plaintiff is the owner of the Registrations for the Copyrights-in-Suit listed on Exhibit 5 which contain original works of authorship.

84.     By using the BitTorrent protocol and a BitTorrent Client and the processes described above, Defendant copied the constituent elements of the Copyrights-in-Suit that are original.

85.     Plaintiff did not authorize, permit or consent to Defendant's copying of its Works.

86.     As a result of the foregoing, Defendant violated Plaintiff's exclusive right to:

(A)     Reproduce the Work in copies, in violation of 17 U.S.C. §§ 106(1) and 501;

(B)     Redistribute copies of the Work to the public by sale or other transfer of ownership, or by rental, lease or lending, in violation of 17 U.S.C. §§ 106(3) and 501;

(C)     Perform the copyrighted Work, in violation of 17 U.S.C. §§ 106(4) and 501, by showing the Work's images in any sequence and/or by making the sounds accompanying the Work audible and transmitting said performance of the Work, by means of a device or process, to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definitions of "perform" and "publically" perform); and

(D)     Display the copyrighted Work, in violation of 17 U.S.C. §§ 106(5) and 501, by showing individual images of the Work nonsequentially and transmitting said display of the Work by means of a device or process to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definition of "publically" display).

87.     Defendant's infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

**WHEREFORE,** Plaintiff respectfully requests that the Court:

(A)     Permanently enjoin Defendant and all other persons who are in active concert or

participation with Defendant from continuing to infringe Plaintiff's copyrighted Work;

(B)     Order that Defendant delete and permanently remove the torrent file relating to Plaintiff's copyrighted Work from each of the computers under Defendant's possession, custody or control;

(C)     Order that Defendant delete and permanently remove the copy of the Work Defendant has on the computers under Defendant's possession, custody or control;

(D)     Award Plaintiff statutory damages in the amount of $750 per work, pursuant to 17 U.S.C. § 504-(a) and (c);

(E)     Award Plaintiff its reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

(F)     Grant Plaintiff any other and further relief this Court deems just and proper.

## <u>DEMAND FOR A JURY TRIAL</u>

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

NICOLETTI & ASSOCIATES, PLLC

By:     _/s/ Paul J. Nicoletti_
Paul J. Nicoletti, Esq. (P44419)
36880 Woodward Ave, Suite 100
Bloomfield Hills, MI 48304
Tel:  (248) 203-7800
Fax:  (248) 203-7801
E-Fax: (248) 928-7051
Email:  paul@nicoletti-associates.com
_Attorneys for Plaintiff_

15

**Defendant: : Teresa Stephenson**

**IP:** 98.222.169.8
**ISP:** Comcast Cable
**Location:** Pendleton, IN

| Hit Date UTC | File Hash | Title |
|---|---|---|
| 04/05/2012 18:25:38 | DC01C9734D05EC1F58F0F17E72AB2F363F0017A4 | Lunchtime Fantasy |
| 04/05/2012 17:37:50 | D9DF175851263F3EC3F630FDE3CE761C3725FA8E | Introducing Veronika |
| 03/14/2012 23:04:04 | 0D0665535B7AE4DA392C1BE0875F6D1337EF3934 | Blonde Ambition |
| 01/07/2012 04:10:29 | 8CBCD849F74505907734E59A088CB05BED744BEE | Anneli Dream Girl |
| 01/02/2012 02:59:05 | AF4FEA9577B0B1C6C617B7CD3C048BB0283C2448 | The Rich Girl Part #2 |
| 12/02/2011 00:59:23 | 3B39460ABF5377A5830F532935B590D40086B834 | Girls Night Out |

**Total Malibu Media, LLC Copyrights Infringed: 6**

EXHIBIT "A"

**Defendant: : Teresa Stephenson**

**IP:** 98.222.169.8
**ISP:** Comcast Cable
**Location:** Pendleton, IN

| Title | Registration Number | Date of First Publication | Registration Date | Most Recent Hit UTC |
|---|---|---|---|---|
| Lunchtime Fantasy | PA0001781702 | 03/19/2012 | 03/19/2012 | 04/05/2012 |
| Introducing Veronika | PA0001776801 | 02/17/2012 | 02/21/2012 | 04/05/2012 |
| Blonde Ambition | PA0001779796 | 03/05/2012 | 03/06/2012 | 03/14/2012 |
| Anneli Dream Girl | PA0001769489 | 12/19/2011 | 01/04/2012 | 01/07/2012 |
| The Rich Girl Part #2 | PA0001762808 | 11/16/2011 | 11/30/2011 | 01/02/2012 |
| Girls Night Out | PA0001762409 | 11/14/2011 | 11/23/2011 | 12/02/2011 |

**Total Malibu Media, LLC Copyrights Infringed: 6**

EXHIBIT "1"

**Defendant: : Chris Minor**

**IP:** 98.222.220.211
**ISP:** Comcast Cable
**Location:** Danville, IN

| Hit Date UTC | File Hash | Title |
|---|---|---|
| 03/25/2012 19:13:54 | 8C80ECEE37E63AC60E39D29DC0BD993A3F5D7FDE | Evening at Home |
| 03/25/2012 18:36:06 | DC01C9734D05EC1F58F0F17E72AB2F363F0017A4 | Lunchtime Fantasy |
| 01/27/2012 01:38:40 | C3A458A999374EAA9A2E4AFB476B439E456ECA07 | Anneli Leila Menage A Trois |

**Total Malibu Media, LLC Copyrights Infringed: 3**

EXHIBIT "B"

**Defendant: : Chris Minor**

**IP:** 98.222.220.211
**ISP:** Comcast Cable
**Location:** Danville, IN

| Title | Registration Number | Date of First Publication | Registration Date | Most Recent Hit UTC |
|---|---|---|---|---|
| Evening at Home | PA0001782559 | 03/21/2012 | 03/22/2012 | 03/25/2012 |
| Lunchtime Fantasy | PA0001781702 | 03/19/2012 | 03/19/2012 | 03/25/2012 |
| Anneli Leila Menage A Trois | PA0001771662 | 01/13/2012 | 01/17/2012 | 01/27/2012 |

**Total Malibu Media, LLC Copyrights Infringed: 3**

EXHIBIT "2"

**Defendant: : Siwei Li**

**IP:** 98.223.45.96
**ISP:** Comcast Cable
**Location:** West Lafayette, IN

| Hit Date UTC | File Hash | Title |
|---|---|---|
| 06/08/2012 04:33:34 | 2CB00C235792C6D9BF5EFD3373043B163AAB2F03 | Young and Hot |
| 05/02/2012 17:14:49 | A91CEA091431E6EC81A953896D8C2814EA4330E5 | One Night Stand |
| 03/27/2012 19:24:25 | DC01C9734D05EC1F58F0F17E72AB2F363F0017A4 | Lunchtime Fantasy |

**Total Malibu Media, LLC Copyrights Infringed: 3**

EXHIBIT "C"

**Defendant: : Siwei Li**

**IP:** 98.223.45.96
**ISP:** Comcast Cable
**Location:** West Lafayette, IN

| Title | Registration Number | Date of First Publication | Registration Date | Most Recent Hit UTC |
|-------|--------------------|--------------------------|-------------------|---------------------|
| Young and Hot | PA0001794969 | 06/06/2012 | 06/08/2012 | 06/08/2012 |
| One Night Stand | PA0001794973 | 05/02/2012 | 05/02/2012 | 05/02/2012 |
| Lunchtime Fantasy | PA0001781702 | 03/19/2012 | 03/19/2012 | 03/27/2012 |

**Total Malibu Media, LLC Copyrights Infringed: 3**

EXHIBIT "3"

**Defendant: : Derick Brooks**

**IP:** 98.223.64.118
**ISP:** Comcast Cable
**Location:** Lafayette, IN

| Hit Date UTC | File Hash | Title |
|---|---|---|
| 04/18/2012 22:51:54 | 099B5EF4C608A77C19691E0F0F046268BE7FACEA | Breakfast in Bed |
| 04/14/2012 13:57:08 | DC01C9734D05EC1F58F0F17E72AB2F363F0017A4 | Lunchtime Fantasy |
| 03/21/2012 21:08:58 | 661F6B7C4BB43CFDCF04B5F2922162C481DCB878 | California Dreams |

**Total Malibu Media, LLC Copyrights Infringed: 3**

EXHIBIT "D"

**Defendant: : Derick Brooks**

**IP:** 98.223.64.118
**ISP:** Comcast Cable
**Location:** Lafayette, IN

| Title | Registration Number | Date of First Publication | Registration Date | Most Recent Hit UTC |
|-------|--------------------|--------------------------|-------------------|---------------------|
| Breakfast in Bed | PA0001787253 | 04/16/2012 | 04/17/2012 | 04/18/2012 |
| Lunchtime Fantasy | PA0001781702 | 03/19/2012 | 03/19/2012 | 04/14/2012 |
| California Dreams | PA0001780564 | 03/12/2012 | 03/12/2012 | 03/21/2012 |

**Total Malibu Media, LLC Copyrights Infringed: 3**

EXHIBIT "4"

**Defendant: : Karen Garrett**

**IP:** 68.58.80.150
**ISP:** Comcast Cable
**Location:** Indianapolis, IN

| Hit Date UTC | File Hash | Title |
|---|---|---|
| 07/25/2012 09:24:47 | 5D1148F9EB8F5B1D943661A91F138360B4BF57C5 | California Dreams |
| 07/23/2012 05:37:51 | 6D2969B406B43947528B6A7A2E0E0F7FF04B5DF0 | Wet Dream |
| 07/23/2012 03:51:40 | 75A248BC76B3C0B8B3C51D2C68BE672E9A5158441 | Angel Afternoon Delight |
| 07/22/2012 21:34:00 | 3ACC64134D28D904A4AD7DAB9D5AFA68EC47E6E2 | Evening at Home |
| 07/18/2012 11:49:45 | 0E1C4BB520761FAE3B10316EB098F8B6FBCAE437 | Backstage |
| 07/02/2012 03:56:39 | E245D9DA3F7940DAFF99D28E914AEF44FDEAD9CD | Yoga in the Sky |
| 07/01/2012 19:24:32 | C53580B76EAEADD6F45A91DED72785EF2F2F2880 | Foot Fetish |
| 06/26/2012 12:59:26 | 3C80887ED171F1D026BCA9014151A9A831BDC7A7 | Happy Couple |
| 06/08/2012 13:11:20 | 2CB00C235792C6D9BF5EFD3373043B163AAB2F03 | Young and Hot |
| 06/01/2012 23:13:12 | 29F844E84CCDBE9803A5EEA1F6A77B107AA111FA | Sneak N Peek |
| 06/01/2012 21:17:02 | E3D38CC7D2559B8AF854863273AEE7CEF02CFD2D | Introducing Kaylee |
| 05/30/2012 12:21:59 | 318552F270912181B248A7D684109ADE189E888E | Blonde Ambition |
| 05/23/2012 08:14:51 | 312904C2CE0CDC9EBBF87580E63CFB90AF5946EA | LA Love |
| 05/17/2012 12:40:55 | 38ECA21BB1C0B8026E8F4788858705B0DF5B4CEE | Romantic Memories |
| 05/09/2012 18:31:43 | ECC49510C0B61C4F92EFCB62AD1A48994B8A88CF | Pretty Back Door Baby |
| 05/03/2012 22:01:05 | A91CEA091431E6EC81A953896D8C2814EA4330E5 | One Night Stand |
| 04/09/2012 14:44:58 | F9DB03E42C4E0F0EA70315B19E9BD5A816F70E09 | Wild at Heart |
| 04/04/2012 00:14:01 | CCD4156CC9B9A99D9538C14CA391B2E1B479FF52 | Heavenly Brunettes |
| 03/30/2012 03:49:44 | 43F39726CF50A4F81D920F748E8FFCC3B69CE1F8 | Perfect Girls |
| 03/26/2012 17:01:58 | 3EA39D5984EC53691B26068388479E55632AFE77 | Paradise Found |
| 03/19/2012 08:11:43 | DC01C9734D05EC1F58F0F17E72AB2F363F0017A4 | Lunchtime Fantasy |
| 03/02/2012 14:18:39 | C9255BEF6851F39C0879F3C65DC851CE9ADCA38F | Like The First Time |
| 02/17/2012 13:57:47 | 08987B0E347D381B9C1A1CD524B1BBFFA8CD06FF | Leila Last Night |

EXHIBIT "E"

| Hit Date UTC | File Hash | Title |
|---|---|---|
| 02/06/2012 01:48:47 | 722526019BF980F7E55C48A1BE7F3023B227AA64 | Silvie Centerfold |
| 01/14/2012 09:27:13 | 3AFAB51555954FEAD187E8A598B769801D758FF7 | Anneli Leila Menage A Trois |

**Total Malibu Media, LLC Copyrights Infringed: 25**

**Defendant: : Karen Garrett**

**IP:** 68.58.80.150
**ISP:** Comcast Cable
**Location:** Indianapolis, IN

| Title | Registration Number | Date of First Publication | Registration Date | Most Recent Hit UTC |
|---|---|---|---|---|
| California Dreams | PA0001780564 | 03/12/2012 | 03/12/2012 | 07/25/2012 |
| Wet Dream | PA0001800357 | 07/20/2012 | 07/20/2012 | 07/23/2012 |
| Angel Afternoon Delight | PA0001776835 | 02/20/2012 | 02/21/2012 | 07/23/2012 |
| Evening at Home | PA0001782559 | 03/21/2012 | 03/22/2012 | 07/22/2012 |
| Backstage | PA0001797943 | 07/17/2012 | 07/18/2012 | 07/18/2012 |
| Yoga in the Sky | PA0001794715 | 06/27/2012 | 06/29/2012 | 07/02/2012 |
| Foot Fetish | PA0001793970 | 06/20/2012 | 06/21/2012 | 07/01/2012 |
| Happy Couple | PA0001794461 | 06/25/2012 | 06/25/2012 | 06/26/2012 |
| Young and Hot | PA0001794969 | 06/06/2012 | 06/08/2012 | 06/08/2012 |
| Sneak N Peek | PA0001791522 | 06/01/2012 | 06/01/2012 | 06/01/2012 |
| Introducing Kaylee | PA0001783646 | 04/01/2012 | 04/03/2012 | 06/01/2012 |
| Blonde Ambition | PA0001779796 | 03/05/2012 | 03/06/2012 | 05/30/2012 |
| LA Love | PA0001790458 | 03/22/2010 | 05/23/2012 | 05/23/2012 |
| Romantic Memories | PA0001790375 | 05/16/2012 | 05/16/2012 | 05/17/2012 |
| Pretty Back Door Baby | PA0001789427 | 05/08/2012 | 05/10/2012 | 05/09/2012 |
| One Night Stand | PA0001794973 | 05/02/2012 | 05/02/2012 | 05/03/2012 |
| Wild at Heart | PA0001785969 | 04/08/2012 | 04/09/2012 | 04/09/2012 |
| Heavenly Brunettes | PA0001780766 | 03/07/2012 | 03/14/2012 | 04/04/2012 |
| Perfect Girls | PA0001783454 | 03/28/2012 | 03/28/2012 | 03/30/2012 |
| Paradise Found | PA0001783362 | 03/25/2012 | 03/26/2012 | 03/26/2012 |
| Lunchtime Fantasy | PA0001781702 | 03/19/2012 | 03/19/2012 | 03/19/2012 |
| Like The First Time | PA0001778844 | 02/29/2012 | 02/29/2012 | 03/02/2012 |

EXHIBIT "5"

| Title | Registration Number | Date of First Publication | Registration Date | Most Recent Hit UTC |
|---|---|---|---|---|
| Leila Last Night | PA0001775906 | 02/01/2012 | 02/17/2012 | 02/17/2012 |
| Silvie Centerfold | PA0001774762 | 01/23/2012 | 02/03/2012 | 02/06/2012 |
| Anneli Leila Menage A Trois | PA0001771662 | 01/13/2012 | 01/17/2012 | 01/14/2012 |

**Total Malibu Media, LLC Copyrights Infringed: 25**

# BitTorrent vocabulary

From Wikipedia, the free encyclopedia
 (Redirected from Terminology of BitTorrent)

This list explains terms used when discussing **BitTorrent clients**, and in particular the BitTorrent
protocol used by these clients.

## Common BitTorrent terms

### Announce

Same as "scrape" (see below), but a client also announces that it wants to join the swarm and that
the server should add it to the list of peers in that swarm.

### Availability

(Also known as distributed copies.) The number of full copies of the file available to the client.
Each seed adds 1.0 to this number, as they have one complete copy of the file. A connected peer
with a fraction of the file available adds that fraction to the availability, if no other peer has this
part of the file.
*Example:* a peer with 65.3% of the file downloaded increases the availability by 0.653. However,
if two peers both have the same portion of the file downloaded - say 50% - and there is only one
seeder, the availability is 1.5.

### Choked

Describes a peer to whom the client refuses to send file pieces. A client *chokes* another client in
several situations:

- The second client is a *seed*, in which case it does not want any pieces (i.e., it is completely
  *uninterested*)
- The client is already uploading at its full capacity (it has reached the value of max_uploads)
- The second client has been blacklisted for being abusive or is using a blacklisted BitTorrent
  client.

### Client

The program that enables p2p file sharing via the BitTorrent protocol. Examples of clients include
µTorrent and Vuze.

### Downloader

A *downloader* is any peer that does not have the entire file and is downloading the file. This term,
used in Bram Cohen's Python implementation, lacks the negative connotation attributed to *leech*.
Bram prefers *downloader* to leech because BitTorrent's tit-for-tat ensures downloaders also upload
and thus do not unfairly qualify as *leeches*.



EXHIBIT "F"

## End Game

Bittorrent has a couple of download strategies for initializing a download, downloading normally among the middle of the torrent, and downloading the last few **pieces** (see below) of a torrent. Typically, the last download pieces arrive more slowly than the others since the faster and more easily accessible pieces should have already been obtained, so to prevent this, the BitTorrent client attempts to get the last missing pieces from all of its peers. Upon receiving a piece, a cancel request command is sent to other peers.

## Fake

A fake torrent is a torrent that does not contain what is specified in its name or description(i.e. a torrent is said to contain a video, but it contains only a snapshot of a moment in the video, or in some cases a virus).

## Hash

The hash is a string of alphanumeric characters in the .torrent file that the client uses to verify the data that is being transferred. It contains information like the file list, sizes, pieces, etc. Every piece received is first checked against the hash. If it fails verification, the data is discarded and requested again. The 'Hash Fails' field in the torrent's General tab shows the number of these hash fails.

Hash checks greatly reduce the chance that invalid data is incorrectly identified as valid by the BitTorrent client, but it is still possible for invalid data to have the same hash value as the valid data and be treated as such. This is known as a hash collision.

## Health

Health is shown in a bar or in % usually next to the torrents name and size, on the site where the .torrent file is hosted. It shows if all pieces of the torrent are available to download (i.e. 50% means that only half of the torrent is available).

## Index

An *index* is a list of .torrent files (usually including descriptions and other information) managed by a website and available for searches. An *index* website can also be a *tracker*.

## Interested

Describes a downloader who wishes to obtain pieces of a file the client has. For example, the uploading client would flag a downloading client as 'interested' if that client did not possess a piece that it did, and wished to obtain it.

## Leech

A *leech* is a term with two meanings. Usually it is used to refer a *peer* who has a negative effect on the swarm by having a very poor share ratio (downloading much more than they upload). Most leeches are users on asymmetric internet connections and do not leave their BitTorrent client open

to seed the file after their download has completed. However, some leeches intentionally avoid uploading by using modified clients or excessively limiting their upload speed.
The often used second meaning of *leech* is synonymous with *downloader* (see above): used simply to describe a *peer* or any client that does not have 100% of the data. This alternative meaning was mainly introduced by most BitTorrent tracker sites.

## Lurker

A *lurker* is a user that only downloads files from the group but does not add new content. It does not necessarily mean that the lurker will not seed. Not to be confused with a *leecher*.

## p2p

Stands for "peer to peer", which is the technology used for file sharing among computer users over the internet. In a p2p network, each node (or computer on the network) acts as both a client and a server. In other words, each computer is capable of both sending and receiving data.

## Peer

A *peer* is one instance of a BitTorrent client running on a computer on the Internet to which other clients connect and transfer data. Usually a *peer* does not have the complete file, but only parts of it. However, in the colloquial definition, "peer" can be used to refer to any participant in the swarm (in this case, it's synonymous with "client").

## Piece

This refers to the torrented files being divided up into equal specific sized pieces (*e.g.* 512Kb, 1Mb). The pieces are distributed in a random fashion among peers in order to optimize trading efficiency.

## Ratio credit

A *ratio credit*, also known as *upload credit* or *ratio economy*, is a currency system used on a number of private trackers to provide an incentive for higher upload/download ratios among member file-sharers. In such a system, those users who have greater amounts of bandwidth, hard drive space (particularly seedboxes) or idle computer uptime are at a greater advantage to accumulate ratio credits versus those who are lacking in any one or more of the same resources.

## Scrape

This is when a client sends a request to the tracking server for information about the statistics of the torrent, such as with whom to share the file and how well those other users are sharing.

## Seeder

A *seeder* is a *peer* that has an entire copy of the torrent and offers it for upload. The more *seeders* there are, the better the chances of getting a higher download speed. If the seeder seeds the whole copy of the download, they should get faster downloads.

## Share ratio

A user's share ratio for any individual torrent is a number determined by dividing the amount of data that user has uploaded by the amount of data they have downloaded. Final share ratios over 1 carry a positive connotation in the BitTorrent community, because they indicate that the user has sent more data to other users than they received. Likewise, share ratios under 1 have negative connotation.

## Snubbed

An uploading client is flagged as *snubbed* if the downloading client has not received any data from it in over 60 seconds.

## Super-seeding

When a file is new, much time can be wasted because the seeding client might send the same file piece to many different peers, while other pieces have not yet been downloaded at all. Some clients, like ABC, Vuze, BitTornado, TorrentStorm, and μTorrent have a "super-seed" mode, where they try to only send out pieces that have never been sent out before, theoretically making the initial propagation of the file much faster. However the super-seeding becomes substantially less effective and may even reduce performance compared to the normal "rarest first" model in cases where some peers have poor or limited connectivity. This mode is generally used only for a new torrent, or one which must be re-seeded because no other seeds are available.

## Swarm

*Main article: segmented downloading*

Together, all *peers* (including *seeders*) sharing a *torrent* are called a *swarm*. For example, six ordinary *peers* and two *seeders* make a *swarm* of eight.

## Torrent

A *torrent* can mean either a `.torrent` metadata file or all files described by it, depending on context. The *torrent file* contains metadata about all the files it makes downloadable, including their names and sizes and checksums of all pieces in the *torrent*. It also contains the address of a *tracker* that coordinates communication between the peers in the swarm.

## Tracker

A *tracker* is a server that keeps track of which seeds and peers are in the swarm. Clients report information to the tracker periodically and in exchange, receive information about other clients to which they can connect. The tracker is not directly involved in the data transfer and does not have a copy of the file.

# See also

Retrieved from "http://en.wikipedia.org/wiki/BitTorrent_vocabulary"
Categories: BitTorrent | Lexis

- This page was last modified on 22 February 2011 at 15:22.
- Text is available under the Creative Commons Attribution-ShareAlike License; additional terms may apply. See Terms of Use for details.
  Wikipedia® is a registered trademark of the Wikimedia Foundation, Inc., a non-profit organization.